## THE FLEMINGTON.
### THE CAR FLOAT NO. 33.
(Circuit Court of Appeals, Second Circuit. April 7, 1914.)
No. 229.

COLLISION (§ 95*)—STEAM VESSELS CROSSING—COMMON FAULTS.

A collision in North River at night between a steamer proceeding at a speed of from 13 to 18 miles an hour and a car float in tow alongside of a tug on a crossing course *held* due to faults of both the steamer and tug; the steamer being in fault for proceeding at such speed until collision when the lights of the tug could be clearly seen, and the tug proceeding to cross the steamer's bows contrary to signals and in violation of the rules.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from the District Court for the Southern District of New York by the Central Railroad Company of New Jersey, as owner of the steam tug Flemington and car float No. 33. The decree adjudged the tug solely in fault for a collision which occurred October 12, 1910, between the steamer Marlborough, and the car float No. 33, which was being towed on the tug's port side, the bow of the float extending beyond the bow of the tug. A decree was entered against the claimant of the Flemington for $2,561.28.

De Lagnel Berier, of New York City, for appellant.

J: Parker Kirlin and William H. McGrann, both of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The collision occurred about 5 o'clock on the morning of October 12, 1910. The weather was clear—bright starlight. The Marlborough is a passenger and freight steamboat plying between Newburgh and New York. At the time in question she was making through the water at least 13 and perhaps 18 miles per hour. It is almost impossible to tell from the testimony of the witness Dennis, who speaks upon this question, how fast she was going by the land. There is no doubt that the Marlborough was "hooked up" at the time she first sighted the Flemington and continued so until the collision. Her captain was not on deck at the time of the collision, but she had a lookout in front of the pilot house and a licensed pilot and a second pilot in the pilot house. That the Marlborough was fully manned as to numbers there can be no question, but the fact that Secor, the lookout, had been on duty for 12 hours prior to the collision, and Brooks, the steersman, had been "on watch all night, too, from 5 o'clock the night before," may, perhaps, have had some effect upon the accuracy of their observations. However, the Marlborough was a comparatively fast river steamer, easily handled and readily maneuvered. The Flemington, on the other hand, was a tug incumbered with a heavy two-track car float. She was making four miles by the land, or about one-fourth the speed of the Marlborough. The District Judge was in doubt as to the negligence of the Marlborough. He says:

"It is true that the Marlborough may have been also at fault in failing to give her (the Flemington) a wider berth. Perhaps she did not starboard as soon as she ought, yet I believe that the case is a proper one to apply the rule that when a vessel is gravely at fault, a court will not be studious to find the other vessel also in fault."

We are inclined to think that this view of the case leaves out of consideration the comparative helplessness of the encumbered tug to avoid the collision after it was possible, if not imminent. The same rules do not apply to a yacht and a mud scow. There was nothing in the elements to prevent safe navigation. It was a bright, clear night, the lights of both vessels were burning and could have been seen for at least a mile. No other vessels were in the vicinity to confuse navigation and we cannot resist the conclusion that for the Marlborough to proceed "hooked up" until she was in the jaws of collision was manifest fault. When it became clear that the Flemington, through a misunderstanding of signals, or other cause, was headed directly across the Marlborough's bow, it seems to us that the Malborough should have put her helm hard-a-port and gone off to the right under the stern of the car float. It seem almost incredible that a steamer in perfect control, seeing a heavily incumbered vessel approaching from a long distance off, cannot avoid her. The problem was so absolutely plain and simple, that we are convinced that a collision could not have occurred

without crass stupidity on the part of both vessels. It required the combined efforts of two fatuous navigators to produce the collision.

The decree is reversed with half costs and the cause is remanded to the District Court with instructions to enter a decree in favor of the libelant for half the damages of the Marlborough.